WAYNE COUNTY PROSECUTOR v PAROLE BOARD

Docket Nos. 147850, 147967, 155594. Submitted December 19, 1994, at Detroit. Decided April 21, 1995, at 10:40 A.M. Leave to appeal sought.

Charles Shockley, an inmate under the jurisdiction of the Department of Corrections, was granted parole by the Parole Board on September 5, 1991. The Wayne County Prosecutor and the victim of Shockley's crimes appealed to the Wayne Circuit Court. The court, John H. Gillis, Jr., J., vacated the board's decision. Shockley was again granted parole by the Parole Board on May 14, 1992. The prosecutor and the victim again appealed and the court, John H. Gillis, Jr., J., again vacated the board's decision. Shockley brought separate appeals as of right and by delayed leave granted from the circuit court's decisions (Docket Nos. 147850, 155594), and the Parole Board appealed from the circuit court's first decision (Docket No. 147967). The appeals were consolidated.

The Court of Appeals *held:*

1. In the absence of any clearly applicable venue provision, the general venue statute governing appeals from government agency decisions, MCL 600.631; MSA 27A.631, may be applied in this case. Venue was proper either in the county of which the appellate is a resident or in the Ingham Circuit Court. Venue was proper in Wayne County because the appellants reside in Wayne County.

2. The prosecutor and the victim of Shockley's crimes had standing to contest the Parole Board's grants of parole. The amendment of MCL 791.234(5); MSA 28.2304(5) after the circuit court's decisions in this case to specifically allow the victim and the prosecutor to appeal from the grant of parole clarifies that the Legislature always intended to give the victim and the prosecutor standing to appeal.

3. The court erred in applying a substantial evidence standard of review instead of an abuse of discretion standard of review. The case must be reversed and remanded to the trial

REFERENCES

Am Jur 2d, Pardon and Parole §§ 73, 80, 92; Statutes § 178.
See ALR Index under Parole, Probation, and Pardon; Statutes.

court for reconsideration using an abuse of discretion standard of review.

4. The trial court erred in finding that Shockley could not be granted parole in the absence of confirmed employment. The Parole Board properly interpreted MCL 791.233(1)(d); MSA 28.2303(1)(d) to provide that parole may be granted before employment is obtained but that the parolee may not be released until employment is obtained.

5. The trial judge's public comments regarding his first decision to vacate the board's decision did not disqualify him from hearing the appeal from the board's second decision. The judge's comments were closely tied to the facts and the evidence and did not reflect actual bias or prejudice.

6. Both suits in the circuit court arose out of the same transaction and involved the same legal issues and were properly assigned to the same judge.

Reversed and remanded.

1. STATUTES — AMENDMENTS — LEGISLATIVE INTERPRETATIONS.

The amendment of an act soon after controversies arise regarding the meaning of the original act may be regarded as a legislative interpretation of the original act.

2. PAROLE — PAROLE BOARD — APPEAL.

The amendment of MCL 791.234(5); MSA 28.2304(5) in 1992 was intended to clarify that the Legislature always intended the statute to give the prisoner's victim and the prosecutor of the county where the prisoner was convicted standing to appeal the Parole Board's decision to grant parole to the prisoner (1992 PA 181).

3. PAROLE — PAROLE BOARD — APPEAL — STANDARD OF REVIEW.

The appropriate standard of review of the Parole Board's decision to grant or deny parole is whether the decision constitutes an abuse of discretion.

4. PAROLE — CONDITIONS FOR PAROLE — EMPLOYMENT.

A prisoner may be granted parole before having obtained employment where the parole is conditioned upon the prisoner not being released until satisfactory evidence of useful employment is provided to the Parole Board (MCL 791.233[1][d]; MSA 28.2303[1][d]).

5. PAROLE — ACTIONS — JUDGES.

Two or more actions that arise out of parole proceedings attendant to a defendant's incarceration arise out of the same

transaction, involve the same legal issues, and may be assigned to the same judge (MCR 8.111[B],[D][1]).

*John D. O'Hair,* Prosecuting Attorney, and *George E. Ward,* Chief Assistant Prosecutor, for the Wayne County Prosecutor and the crime victim.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Chester S. Sugierski, Jr.,* Assistant Attorney General, for the Parole Board.

ACLU Fund of Michigan (by *Patricia A. Streeter, Neal Bush,* and *Goodman, Eden, Millender & Bedrosian* [by *William H. Goodman*]), for Charles Shockley.

Before: MARILYN KELLY, P.J., and W. P. CYNAR* and K. T. WILDER,** JJ.

PER CURIAM. Inmate Charles Shockley was granted parole by the Parole Board on September 5, 1991, and again on May 14, 1992.[1] In each instance, the prosecutor and the victim of Mr. Shockley's crimes appealed to the circuit court and the parole decisions were vacated.[2] Mr. Shockley and the board appeal as of right from the first

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

** Circuit judge, sitting on the Court of Appeals by assignment.

[1] In 1987, Mr. Shockley was convicted of first-degree criminal sexual conduct, MCL 750.520b(1); MSA 28.788(2)(1), and unlawfully driving away an automobile, MCL 750.413; MSA 28.645. On March 23, 1987, he was sentenced to concurrent terms of 6½ to 15 years and 3 to 5 years, respectively. His convictions were affirmed on appeal. *People v Shockley,* unpublished opinion per curiam of the Court of Appeals, decided April 7, 1989 (Docket No. 101969).

[2] The board's subsequent grant of parole to Mr. Shockley was again vacated in January 1994. Mr. Shockley's appeal from that decision, Docket No. 174741, has been held in abeyance pending resolution of this case.

decision; Mr. Shockley appeals by delayed leave granted from the second decision. The parties' separate appeals have been consolidated. We reverse and remand.

We first consider whether venue for this case was proper in Wayne County, where defendant was convicted, rather than in Ingham County, where the Parole Board acted. We conclude that venue was properly laid.

In *Blue Cross & Blue Shield of Michigan v Comm'r of Ins,* 155 Mich App 723, 728-729; 400 NW2d 638 (1986), this Court held that, in appeals from decisions of administrative agencies, venue is proper either where prescribed by statutes applicable to the agency, or as provided in MCL 600.631; MSA 27A.631, or as provided in the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.* In the case before us, the statutes regarding the agency do not address the question of venue. See MCL 791.231-791.246; MSA 28.2301-28.2316. Similarly, because a right to appeal has been specifically provided by law, MCL 600.631; MSA 27A.631, which controls general appeals from agency decisions, does not apply. See MCL 791.234(5); MSA 28.2304(5). Lastly, because this is not a contested case as defined by the court rules and the APA, the venue provisions of the APA do not apply either. See MCL 24.301; MSA 3.560(201); see also MCL 24.303; MSA 3.560(203); MCR 7.105(A)(2). We also note that the general provision of the Revised Judicature Act regarding actions against government agencies does not apply because this was an appeal and not an original action. See MCL 600.1615; MSA 27A.1615.

In the absence of any clearly applicable venue provision, we find that the general venue statute governing appeals from government agency decisions—although not technically applicable—is in

pari materia with the parole appeal statute and therefore should apply by analogy. See MCL 600.631; MSA 27A.631. Thus, venue was proper either in "the county of which the appellant is a resident or [in] the circuit court of Ingham county." Because appellants reside in Wayne County, venue was proper there.

Appellants next argue that the prosecutor and the victim of Mr. Shockley's crimes had no standing to contest the board's grants of parole. We disagree.

Since the trial court's decisions in these two cases, the parole statute has been amended to specifically allow appeals from a grant of parole by the victim and the prosecutor of the county where the defendant was convicted. See MCL 791.234(5); MSA 28.2304(5). The legislative analysis specifically refers to this case and to the board's argument that the victim and the prosecutor lack standing as reasons for enacting the amendment. It is well-settled that when an amendment is enacted soon after controversies arise regarding the meaning of the original act, it is logical to regard the amendment as a legislative interpretation of the original act. *Detroit v Walker,* 445 Mich 682, 697; 520 NW2d 135 (1994), and authority cited therein. Thus, the amendment clarifies that, all along, the Legislature intended to give the victim and the prosecutor standing to appeal the Parole Board's decision. See *id.*

Next, appellants argue that the trial court applied the wrong standard of review when it decided that the board's decision was not supported by substantial evidence. We agree and reverse and remand.

Review of agency decisions "in cases in which a hearing is required" must include the determination whether the decision is "supported by compe-

tent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. However, a "hearing" is not required before parole is granted except for prisoners "under sentence for life or for a term of years." See MCL 791.234(4)(b); MSA 28.2304(4)(b); see also MCL 791.235; MSA 28.2305. Rather, the statutes provide for an "interview" with the prisoner and for consideration of a "statement" by the victim. See MCL 791.235(1), (4)-(6); MSA 28.2305(1), (4)-(6); see also MCL 780.771(1)-(2); MSA 28.1287(771)(1)-(2). Although the inmate is allowed to "present relevant evidence in support of release," the statute does not provide for cross-examination and specifically prevents the prisoner from being represented by counsel. See MCL 791.235(6); MSA 28.2305(6). Finally, the decision whether to grant or deny parole is explicitly entrusted to the Parole Board's discretion. See MCL 791.234(5); MSA 28.2304(5).

In light of the provisions quoted above and of the lack of an explicit standard of review in the statute, we conclude that the appropriate standard of review is abuse of discretion. See *J & P Market, Inc v Liquor Control Comm,* 199 Mich App 646, 651; 502 NW2d 374 (1993). This discretion, however, is not unfettered but, rather, is circumscribed by the many requirements of the statute. See, e.g., MCL 791.233(1); MSA 28.2303(1); MCL 791.235(1), (3), (4), (7)-(9); MSA 28.2305(1), (3), (4), (7)-(9).

In this case, the trial court vacated the Parole Board's decision by using a higher standard of review than was warranted. Because we cannot guess whether the trial court would have upheld the board's decision had it applied the proper standard of review, we remand for reconsideration. Compare *J & P, supra* at 649-652 (where the trial court *upheld* the agency's decision using the higher standard of review, the error was harm-

less). On remand, the trial court is to determine whether, in light of the record and of the statutory requirements, the decision to grant parole constituted an abuse of discretion. The trial court is not to substitute its judgment for that of the Parole Board. *Marrs v Bd of Medicine,* 422 Mich 688, 694-695; 375 NW2d 321 (1985).

Next, the board argues that the trial court erred in finding that Mr. Shockley could not be granted parole in the absence of confirmed employment. We agree.

The statute provides that "[t]he *grant* of a parole shall be subject to all of the following: . . . (d) A prisoner shall not be *released* on parole until the parole board has satisfactory evidence that arrangements have been made for such honorable and useful employment as the prisoner is capable of performing." MCL 791.233(1)(d); MSA 28.2303(1) (d) (emphasis added). It is clear from this subsection that the *granting* of parole is conditioned upon the inmate not being *released* until satisfactory evidence of useful employment is provided to the board. It would be unreasonable to require a prisoner to obtain employment before parole is granted. On the other hand, it is not unreasonable to withhold releasing a parolee until employment is obtained. The board's longstanding interpretation of the statute is reasonable and should have been upheld. *Southfield Police Officers Ass'n v Southfield,* 433 Mich 168, 177; 445 NW2d 98 (1989).

Mr. Shockley next argues that the trial judge should have been disqualified from hearing the second case because he made public comments regarding his first decision. We disagree.

"A judge is disqualified when the judge cannot impartially hear a case, including a proceeding in which the judge . . . (2) is personally biased or prejudiced for or against a party." MCR 2.003(B)

(2). Normally, the party seeking disqualification has the burden of proving actual prejudice. *People v Houston,* 179 Mich App 753, 756; 446 NW2d 543 (1989). However, that showing is not required in situations where experience teaches us that the possibility of actual bias is too high to be constitutionally tolerable, such as where the judge has a financial stake in the outcome, has been the target of personal abuse or criticism by a party, is enmeshed in other legal matters involving a party, or may have prejudged the case because of previous participation in the proceedings. *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975).

In this case, Mr. Shockley alleges that the judge's comments to the media show actual bias or prejudice. We disagree. The trial judge told a television reporter:

> Once I was acquainted with the facts, the brutal nature of the crime, the amount of time—he had only served some five years [sic] for this horrible crime—his poor prison adjustment, plus the psychological reports, it seemed clear-cut to me that he should not be released early.

These comments are closely tied to the facts and the evidence in the case and do not reflect actual bias or prejudice, although they are colored by the judge's erroneous perception of the applicable standard of review. Further, it is well-settled that "[r]epeated rulings against a litigant, no matter how erroneous, and how vigorously and consistently expressed, are not disqualifying." *Mahlen Land Corp v Kurtz,* 355 Mich 340, 350; 94 NW2d 888 (1959).

Lastly, Mr. Shockley argues that it was improper to assign the second case to the first trial judge, rather than by random lot, because the

second grant of parole constituted a separate occurrence. We disagree.

In the absence of a different local rule, "[a]ll cases must be assigned by lot" except that, "if one of two or more actions arising out of the same transaction or occurrence has been assigned to a judge, the other action or actions must be assigned to that judge." MCR 8.111(B) and (D)(1). There is little case law interpreting this rule.

This Court has held that "actions arise from the same transaction or occurrence only if each arises from the identical events leading to the other or others. For instance, several actions separately brought by various passengers of a train which derailed would arise out of one occurrence or transaction." *Armco Steel Corp v Dep't of Treasury,* 111 Mich App 426, 437; 315 NW2d 158 (1981) (finding that separate taxpayer actions involving the same statute did not arise out of the same transaction). In *Ross v Onyx Oil & Gas Corp,* 128 Mich App 660, 668-669; 341 NW2d 783 (1983) (CYNAR, J.), a different panel held that separate suits did not arise out of the same transaction where one sought to invalidate a judgment purporting to affect the plaintiffs' rights under a lease and the other sought a declaration that the lease had terminated and that further acts by the lessee constituted a trespass.

The present case differs from both *Armco* and *Ross.* Here, both actions arose out of parole proceedings attendant to defendant's incarceration. Therefore, we conclude that the suits arose out of the same transaction—and involve the same legal issues—and that the cases were properly assigned to the same judge.[3] We note that the judge was

---

[3] We do not decide whether, in the interest of judicial economy and the similarity of legal and factual issues, the cases also could have been properly consolidated below. See *Armco, supra* at 437-438.

initially assigned the case by random draw, without objection, and that he was not the same judge that convicted defendant.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.