Gage, J.
 

 Respondent appeals by leave granted a circuit court order reversing respondent’s decision to deny petitioner parole and ordering respondent to parole petitioner within twenty-eight days. We reverse.
 

 In 1994, petitioner, who was then eighteen years old, pleaded no contest to a charge of armed robbery, MCL 750.529; MSA 28.797, and received a sentence of 2-1/2 to 10 years’ imprisonment. According to the investigation of the robbery, petitioner and another person went to a fast-food restaurant, where petitioner held a knife to the throat of a victim and ordered, “Give me your wallets,” while petitioner’s
 
 *652
 
 accomplice then secured the wallets of two other victims.
 

 In February or March of 1996, petitioner was paroled. Petitioner’s parole was revoked in June 1997 after a Parole Board hearing examiner found that petitioner physically assaulted his girlfriend and resisted arrest on the day after the assault. In approximately August 1998, petitioner again became eligible for parole. Respondent refused to parole petitioner. Pursuant to MCL 791.234(8); MSA 28.2304(8) and MCR 7.104(D)(1), petitioner appealed the parole denial to the circuit court, which granted leave and then found that respondent had abused its discretion in refusing to parole petitioner. Instead of citing any objective facts to demonstrate that respondent lacked a legitimate excuse or justification for denying parole, the circuit court merely stated that it had a “feeling that the parole board is not objective and unprejudiced in evaluating the parolees or the prisoners.”
 

 Respondent now argues that the circuit court erred in finding that its refusal to parole petitioner constituted an abuse of discretion. The Parole Board’s decision whether to parole a prisoner is reviewed for a “clear abuse of discretion.” MCR 7.104(D)(5)(b);
 
 In re Parole of Roberts,
 
 232 Mich App 253, 257; 591 NW2d 259 (1998). Generally, an abuse of discretion is found where an unprejudiced person, considering the facts on which the decisionmaker acted, would say there is no justification or excuse for the ruling.
 
 People v Ullah,
 
 216 Mich App 669, 673; 550 NW2d 568 (1996). The board’s discretion is limited, however, by statutory guidelines, and whether it abused its discretion must be determined in light of the record and these statutory requirements.
 
 In re Parole of Johnson,
 
 
 *653
 
 219 Mich App 595, 598; 556 NW2d 899 (1996). First and foremost, the board may not grant a prisoner liberty on parole until it “has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner’s mental and social attitude, that the prisoner will not become a menace to society or to the public safety.” MCL 791.233(l)(a); MSA 28.2303(l)(a). The appellant bears the burden of demonstrating an abuse of discretion, and the reviewing court may not substitute its judgment for that of the Parole Board. MCR 7.104(D)(5);
 
 Wayne Co Prosecutor v Parole
 
 Bd, 210 Mich App 148, 153-154; 532 NW2d 899 (1995).
 

 Pursuant to MCL 791.233e(l); MSA 28.2303(6)(1), parole guidelines further limit respondent’s discretion in determining whether to grant parole. With respect to the effect of these parole guidelines on the Parole Board’s exercise of discretion, this Court has observed the following:
 

 While the statutes provide the framework, the Legislature also enacted provisions to create “parole guidelines,” intended to “govern the exercise of the parole board’s discretion ... as to the release of prisoners on parole . . . .” MCL 791.233e(l); MSA 28.2303(6)(1). The parole guidelines are now found at 1996 [AACS], R 791.7716 ....
 

 The parole guidelines are an attempt to quantify the applicable factors that should be considered in a parole decision. Those factors are set forth by statute and are further refined by administrative rule. MCL 791.233e; MSA 28.2303(6); 1996 [AACS], R 791.7715. By quantifying the factors, the Legislature plainly intended to inject more objectivity and uniformity into the process in order to minimize recidivism and decisions based on improper considerations such as race. MCL 791.233e; MSA 28.2303(6); 1996 [AACS], R 791.7716. Therefore, each potential parolee is evaluated under the guidelines and scored with respect to each guide
 
 *654
 
 lines category. These scores are then aggregated to determine a total guidelines score. That score is then used to fix a probability of parole determination for each individual on the basis of a guidelines schedule. Prisoners are categorized under the guidelines as having a high, average, or low probability of parole.
 
 [In re Parole of Johnson, supra
 
 at 598-599.]
 

 The guidelines do not hamper respondent’s discretion absolutely. MCL 791.233e(6); MSA 28.2303(6)(6) explains that the Parole Board “may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole ... or by granting parole to a prisoner who has a low probability of parole.” For prisoners at either extreme, respondent may depart from the guidelines only for “substantial and compelling reasons stated in writing.” MCL 791.233e(6); MSA 28.2303(6)(6);
 
 In re Parole of Johnson, supra
 
 at 601.
 

 We find the circuit court erred in concluding that respondent abused its discretion in refusing to parole petitioner. We initially note that the circuit court clearly failed to apply the correct standard of review to respondent’s decision. The circuit court reversed respondent’s decision on the basis of its belief that “the Michigan Parole Board intends to keep violators ... in prison on their total terms in the guise—so to speak, to protect the public,” and its “feeling that the parole board is not objective and unprejudiced in evaluating the parolees or the prisoners.” The correct standard of review, however, asks whether an unprejudiced person, considering the facts on which the Parole Board acted, would say there was no justification or excuse for the decision made.
 
 Ullah, supra.
 
 With respect to the circuit court’s opinion that respondent was not objective, we observe that under
 
 *655
 
 this standard of review and the parole guidelines, respondent is not held to a requirement of absolute objectivity. Respondent must make its decision in light of “all of the facts and circumstances,
 
 including the prisoner’s mental and social attitude.”
 
 MCL 791.233(l)(a); MSA 28.2303(l)(a) (emphasis added). An evaluation of a prisoner’s mental and social attitude involves a subjective determination for which the parole guidelines cannot account. Thus, while respondent must make its decisions on bases that are as objective as possible, see
 
 In re Parole of Johnson, supra
 
 at 601 (Parole Board may not base decisions on entirely subjective grounds), nothing precludes respondent from considering subjective factors in reaching a parole decision.
 

 We also note that absolutely no indication exists within the record that respondent actually made its decision on a purely subjective basis or that the decision otherwise represented the product of respondent’s improper prejudice. It is undisputed that respondent conducted a guidelines evaluation of petitioner before it reached a decision on his parole, as mandated by MCL 791.233e(l), (5); MSA 28.2303(6)(1), (5). Pursuant to the evaluation, respondent scored petitioner’s objective parole variables and aggregated them just as the Legislature intended, ultimately classifying petitioner in the average probability of parole category. Contrary to petitioner’s suggestion, however, that objective process does not mandate a certain result. If respondent may parole low probability prisoners for substantial and compelling reasons only, and deny parole to high probability prisoners for substantial and compelling reasons only, MCL 791.233e(6); MSA 28.2303(6)(6), it follows that
 
 *656
 
 the Parole Board may grant or deny parole to average probability prisoners for legitimate reasons that are neither compelling nor substantial. Thus, while the parole guidelines provide greater restrictions on respondent’s exercise of discretion concerning a prisoner at either extreme, the guidelines allow for a broader exercise of discretion in the case of a prisoner with an average probability of parole. Therefore, although respondent correctly engaged in the objective, legislatively mandated decisional process to determine whether to parole petitioner, its adherence to this process did not constrain it to reach a certain decision.
 
 [1]
 

 Furthermore, there is no indication that respondent’s decision resulted from improper prejudice. It is difficult to ascertain exactly what the circuit court meant when it referred to respondent’s alleged prejudice. If the circuit court’s comment was premised on the assumption that respondent’s decisions may not be based on improper considerations such as “race, color, national origin, gender, religion, or disability,” it was correct; the Parole Board may not make release decisions based on those factors. See MCL 791.233e(4); MSA 28.2303(6)(4); 1996 AACS, R 791.7716(1). If the circuit court’s comment was premised on the assumption that respondent’s decisions may not be informed by the circumstances of the prisoner’s crime, his past performance on parole, and his mental health history, however, it was incorrect; the parole guidelines account for all of these factors. 1996 AACS, R 791.7715, R 791.7716. In any
 
 *657
 
 event, there is absolutely no indication that respondent was improperly prejudiced against petitioner.
 

 Turning now to respondent’s reasons for denying petitioner parole, respondent based its decision on the following objective criteria, as provided in the guidelines: (1) that petitioner’s underlying crime of robbery (a) “[i]nvolved an indiscriminate use of force/threats,” (b) “[a]rose in a multiple offender situation,” (c) “[victimized a stranger,” (d) “[i]nvolved the touching with or discharge of a weapon,” (e) “[i]nvolved a dangerous weapon,” and (f) “[h]ad multiple victims;” and (2) that petitioner’s property crime (a) “[i]nvolved the presence of a weapon(s),” (b) “[i]nvolved person(s) being present in home/business,” and (c) “[s]how[ed] malicious intent to intimidate.” Respondent additionally noted petitioner’s “juvenile convictions for felony behavior” as a negative factor. With respect to petitioner’s correctional adjustment, respondent stated that petitioner had a history of parole failure, a technical supervision failure, and lacked insight into his earlier failures. Finally, concerning petitioner’s personal history, respondent noted an unstable employment history. Considering these reasons, we cannot conclude that respondent abused its discretion in refusing to parole petitioner, who was scored as an unremarkable “average” parole risk under the parole guidelines and, on the basis of his past assaultive behavior, had proven himself to pose a danger to the public.
 

 Petitioner argues that respondent abused its discretion because it failed to recognize that it had classified petitioner’s armed robbery offense as a “[s]ituational crime, unlikely to [re]cur.” Respondent’s classification of petitioner’s armed robbery offense as
 
 *658
 
 a situational crime signifies merely that he is unlikely to commit the crime of armed robbery again. In light of petitioner’s assaultive behavior as a juvenile, the assaultive nature of his armed robbery crime, and the assault he inflicted on his girlfriend when he was previously released on parole, however, it is not easy to say with assurance that he would refrain from endangering others if he were to be rereleased on parole. Again, respondent must have a “reasonable assurance . . . that the prisoner will not become a menace to society or to the public safety” before it may order release on parole. MCL 791.233(l)(a); MSA 28.2303(l)(a). Under the circumstances of the instant case, respondent lacked that reasonable assurance.
 

 As a related issue, petitioner contends that respondent should not have considered his prior parole violation as a negative factor because a jury acquitted him of the aggravated assault against his girlfriend and the district court dismissed with prejudice his prosecution for hindering, resisting, or interfering with a police officer. The fact that petitioner’s assault and resisting charges were never proved beyond a reasonable doubt has no bearing on the legitimacy or correctness of the Parole Board’s conclusion that petitioner violated his parole because parole violations are established by a preponderance of the evidence. See
 
 In re Wayne Co Prosecutor,
 
 232 Mich App 482, 485; 591 NW2d 359 (1998).
 

 Petitioner further contends that respondent improperly ignored evidence that his girlfriend may have lied about biting petitioner when he assaulted her and broke her jaw. However, there is absolutely no indication that respondent ignored this evidence. Moreover, petitioner’s girlfriend testified in connec
 
 *659
 
 tion with her civil suit against petitioner and his mother that she bit petitioner after the altercation started, not before petitioner assaulted her. Consistent with the girlfriend’s testimony concerning the chronology of the biting, the Parole Board rejected petitioner’s claim of self-defense, finding that “if a biting actually took place, it more than likely occurred while the parolee was in a dominant position over the victim” after the assault commenced. The revelation that petitioner’s girlfriend may have been less than candid with the Parole Board at the parole violation hearing has little bearing on the ultimate issue whether respondent abused its discretion in refusing to parole petitioner.
 

 Petitioner also argues that respondent gave too much weight to the fact that he had pleaded guilty of assault and battery as a juvenile because his juvenile violations did not affect the parole guidelines. We believe respondent was justified, however, in considering petitioner’s repeated episodes of assaultive behavior, which included his assaultive behavior as a juvenile, as indicative of an underlying tendency toward violence. Petitioner’s record casts serious doubt on his capability or desire to conduct himself in a manner consistent with the public need for safety. See MCL 791.233(l)(a); MSA 28.2303(l)(a). Respondent gave petitioner’s juvenile record proper consideration, especially given that petitioner had only just reached adulthood when he committed the underlying crime of armed robbery and that his juvenile offenses were of relatively recent vintage.
 

 Petitioner additionally maintains that respondent had no justification or excuse for concluding that he lacked insight into his earlier failures. Petitioner
 
 *660
 
 repeatedly engaged in assaultive behavior, however, even when he was released on parole. Petitioner’s failure to conform his behavior to societal norms indicates that he lacked necessary insight. Moreover, to the extent that this finding was subjective, it was no doubt based on petitioner’s statutorily mandated interview. See MCL 791.235(1); MSA 28.2305(1). Contrary to petitioner’s suggestion on appeal, there is no indication that respondent refused to conduct an interview with petitioner, nor is there any indication that respondent refused to allow petitioner to submit certain evidence at the interview.
 

 Finally, petitioner contends that respondent’s suggestions regarding corrective action petitioner could take to facilitate his release on parole reflect respondent’s abuse of discretion in denying parole. MCL 791.235(12); MSA 28.2305(12) provides:
 

 When the parole board makes a final determination not to release a prisoner, the prisoner shall be provided with a written explanation of the reason for denial and, if appropriate, specific recommendations for corrective action the prisoner may take to facilitate release.
 

 Pursuant to this mandate, respondent stated that petitioner, in order to facilitate his release, should “[demonstrate responsible behavior by avoiding situations which result in misconduct citations,” “[p]rovide additional demonstration of positive prison behavior during the period of the continuance,” and “[e]am [his] GED [general equivalency diploma].” Petitioner apparently earned his GED in August 1998. Moreover, in May 1998, petitioner was awarded twenty-two days of good-time credit for good behavior. Petitioner argues that respondent’s suggestion that he earn his ged, when he actually had obtained it,
 
 *661
 
 shows that respondent failed to review his record in reaching its decision on parole. Petitioner also argues that respondent’s suggestion that he maintain good behavior shows that respondent failed to review the facts, because it would not have made this suggestion if it had been aware that petitioner’s prison behavior was exemplary.
 

 Regarding the ged issue, respondent did not deny parole to petitioner simply because he failed to prove that he could obtain gainful employment on release or because he did not have a ged certificate. Information about petitioner’s educational achievement most likely would not have made a difference in respondent’s ultimate decision to deny parole. As for the issue concerning petitioner’s prison disciplinary status, we find it unremarkable. Respondent’s comment that petitioner should “[p]rovide
 
 additional
 
 demonstration of positive behavior” (emphasis added) implies that it was aware of petitioner’s good disciplinary status. Unfortunately, in light of petitioner’s proven assaultive tendencies, respondent did not find petitioner’s record of good behavior while in prison to be an overriding justification for granting his parole.
 

 In light of the foregoing, respondent’s refusal to parole petitioner did not constitute a clear abuse of discretion.
 
 [2]
 

 Reversed.
 

 [1]
 

 Thus, petitioner is incorrect in arguing that different panels of the Parole Board may not reach differing decisions because the guidelines mandate certain outcomes.
 

 [2]
 

 In light of our decision, it is unnecessary to address respondent’s issue regarding whether the circuit court was empowered to order respondent to parole petitioner. We note, however, that this Court today has held that a circuit court order that the Parole Board release a prisoner on parole violates the constitutional separation of powers principle.
 
 Hopkins v Parole Bd,
 
 237 Mich App 629; _ NW2d _ (1999).